Thank you, Judge Traxler. May it please the Court. The straightforward application of this Court's controlling precedent, Invade-N-Two, is dispositive of this appeal. Here, as Invade-N-Two, the borrowers in the underlying state court litigation have brought state law claims alleging that loans made by a state-chartered federally insured bank are usurious. Here, Community State Bank, that state-chartered federally insured bank, is the true lender, and therefore the real party in interest, for the same reason that Invade-N-Two, Discover Bank, was the true lender, and therefore the real party in interest. Therefore, under Invade-N-Two, borrowers' state law usury claims are completely preempted by Section 27 of the Federal Deposit Insurance Act, and therefore the federal courts have jurisdiction over the parties' underlying dispute. For that reason, federal courts have jurisdiction over appellant's petition brought under Section 4 of the Federal Arbitration Act. Now, this Court's- Do you think our real party in interest analysis we used in Invade-N-Two survived the Supreme Court decision? I do, Your Honor. The Supreme Court's opinion in Invade-N-Two certainly reversed and remanded Invade-N-Two. However, that reversal was limited to the narrow grounds that the stateful cause of action that this Court found conferred federal jurisdiction was a counterclaim, not a claim. The Supreme Court ruled that even in the complete preemption analysis arena, the well-pleaded complaint rule, the Holmes Group case, applies, and a counterclaim is incapable of conferring federal jurisdiction. The key aspects of the Invade-N-Two opinion that are relevant here, all of the aspects that are relevant here, survived the Supreme Court, reaffirmed as a general matter the doctrine of complete preemption. That is, the doctrine that a state law purportedly, purely state law, cause of action can be recharacterized as a federal claim for purposes of the complete preemption analysis and a jurisdictional analysis. Does your argument about complete preemption depend on our agreeing with you about the any other reason that would compel us not to give effect to Judge Fox's jurisdictional determination? In other words, if we disagree with you on the continuing validity of Invade-N-Two, do you lose? No, Your Honor. Even if Invade-N-Two is not precedential, and we believe it is, even if it is not, Invade-N-Two reached the proper result, the Supreme Court has never reached the issue of whether Section 27 of the FBIA preempts in the manner that NBA does. We believe that the Invade-N-Two panel was right on that count, and that was the right decision, even if it's not precedential. We also believe that the Invade-N-Two panel was right to look to the true lender and to look to a party not named in the underlying state court litigation. As the Invade-N-Two panel indicated, to not do that analysis would allow plaintiffs to artfully plead and try to avoid federal jurisdiction, thereby frustrating Congress's intent to make loans made by state-chartered, federally insured banks always governed by one uniform set of laws, namely the FBIA. So even if Invade-N-Two is not precedential, and it is, but even if it were not, it reached the right result, and there is nothing in the Supreme Court's jurisprudence that would prevent this court from reaching the same result independently, even if Invade-N-Two had never been decided. The Supreme Court, in Invade-N-Two, did not indicate that the true lender analysis, pardon me, this court's opinion in Invade-N-Two survived the Supreme Court's opinion in Invade-N. As a matter of fact, the Supreme Court indicated that had the sequencing issue been reversed, that is, the claim versus counterclaim issue, the Supreme Court likely, likely would have found that there was federal question jurisdiction here. Justice Roberts' concurrence in dissent was even stronger, but the majority said it was likely. And the reason why it was only likely, according to Justice Ginsburg's majority opinion, is because the Supreme Court has never explicitly resolved the Section 27 of the FBIA complete preemption issue. Invade-N-Two has resolved that in this circuit. Now, the straightforward application of Invade-N-Two here reaches the conclusion that Community State Bank is the true lender. All of the evidence considered by Invade-N-Two overwhelmingly supports that conclusion. The District Court erred by not conducting that analysis, even though the District Court said, I will assume that Invade-N-Two applies, even though I believe it's been vacated by the writ of cert being that the District Court did not actually apply the true lender analysis in the manner announced by the Invade-N-Two panel opinion. Now, the first factor looked to by the Invade-N-Two opinion was who made the loans. And the facts here are even stronger. Invade-N-Two, the court found it persuasive that even though the servicers decided whether to extend the loans, they did so only under guidelines by the bank. Here, it's even stronger. Here, the servicers' role in deciding whether to extend the loans was to collect the information from prospective borrowers, transmit it to the bank, and the bank then applied its proprietary computer algorithm and decided yes or no. We will make the loan or we will not. But the allegations here are that the servicers were, in fact, dispersing loans improperly, that they were doing so without the proper licenses. How does that bring in Community Savings Bank? You're right, Your Honor. One of the allegations in the underlying state court complaint is the licensure issue. There are several causes of action. That is not the cause of action that is completely preempted. The cause of actions that are completely preempted is the state law usury cause of action and, for example, the unfair and deceptive trade practices cause of action, which depends upon the underlying loans actually being usurious. Because those are completely preempted and implicate a federal question. The other purely state law claims are claims over which federal courts have supplemental jurisdiction. But is there any indication on this record that Community Savings Bank even sought arbitration against Knox? Yes, Your Honor. It was refused? It was refused. There are letters in the Joint Appendix, Your Honor. Arbitration was sought by all the appellants here and it was refused. And the Section 4 petition was brought by all appellants. Now, it would not be necessary for the bank even to be a party to this petition, but they are. They weren't a party to the underlying state court litigation. They didn't implead voluntarily because the position is that the proper forum is arbitration. They didn't want to voluntarily become involved in that litigation and perhaps waive a right to arbitration. But all parties, all appellants are parties to the Section 4 petition. Continuing to apply the true lender analysis here, the bank was invaded too. Here, they were drawn on a check of Community State Bank signed by an officer of the bank. The banks carried the loans on their financial statements, similar to invaded too. Here, those financial statements were subject to examination by both the FDIC and the South Dakota Division of Banking. Upon maturity, the loans, both the principal and the interest, were repaid to the bank. In all communications with the lenders, the promissory note, all communications. There was a clear delineation of authority, both on the face of the promissory notes and on the administrative services agreements that defined the rights and responsibilities as between the bank on the one hand and the servicers on the other hand. The bank decided whether to extend credit, made the loans, carried the loans, was repaid the loans. The servicers serviced and marketed and collected the loans, just as in the invaded too case. That servicing and marketing and collection was at the strict direction and control of the bank. As a matter of fact, the facts here are even stronger. The bank sent in secret shoppers to make sure that the servicers were faithful to the bank's instructions. The bank took its obligation as the lender seriously. That application of the Baden 2 true lender analysis points to the same conclusion, that the unnamed lender, the state chartered, federally insured bank, your community state bank, is the true lender and therefore the real party in interest. I do understand that, of course, that Community Savings Bank sought to compel arbitration. When you sit down, I would appreciate it if you could show me in the record where a demand for arbitration by Community Savings Bank was served on Knox. I would find that helpful if you don't mind. Certainly, Your Honor. Thank you. Here, in Baden 2, the initial demand for arbitration was the actual Section 4 petition to compel arbitration. And so, in any event, I'm not sure that it's necessary under this court's precedent to have a previous informal demand for arbitration. Certainly... For my own information, I would appreciate knowing that. Certainly, Your Honor. Thank you. The one fact that is slightly different here as in Baden 2. In Baden 2, the court found that the bank was obligated to indemnify the servicers in connection with the claims brought in the underlying state court litigation. Here, there are indemnification provisions. They go in both directions. But on the particular state law cause of actions here, the bank would not be obligated to indemnify the servicers. That doesn't change the true lender analysis. That cannot turn the true lender analysis on its head. Well, you're focusing a great deal on the continued validity of Baden in which I have some interest, obviously. But the problem that I'm having is that one of the things that Baden was very clear about is the role of the plaintiff as the master of his or her complaint. And what you have here is an instance in which there is no claim specifically asserted against Community Savings Bank, as well as a declaration that no relief is being sought from Community Savings Bank. So how does that comport with allowing the plaintiff to craft the cause of action that he or she wishes to craft and delimit it in the way he or she wishes to delimit it? Well, Your Honor, in the Supreme Court's opinion in Baden, the Supreme Court reaffirmed the continuing vitality of the complete preemption doctrine. That is, that even purportedly purely state law claims could still be recharacterized as federal claims. And it indicated that if it weren't for the sequencing issue, the court likely would have found that there was federal jurisdiction. There is discussion in the majority opinion in Baden regarding the plaintiff's framing of the complaint and not looking to counterfactuals. But that is all in the context of the sequencing issue. What do you mean by that? Sequencing issue? I'm sorry, Your Honor. The sequencing issue, as the dissent referred to it and the concurring opinion referred to it, sequencing of the claim versus counterclaim for purposes of the well-pleaded complaint rule. That is the only area in which the framing came up. And it was talking about the framing of a claim versus a counterclaim. And the court found that it was important, perhaps not important, but the court at least indicated that it was not mere happenstance of the way that sequencing came out. In the first instance, the servicers brought a state law collection action. And they had the right to arbitrate that, but they decided to go to court. And then it was only the counterclaim then. All of a sudden they reversed course and tried to bring the whole litigation into arbitration. Are you saying that language is of no consequence to the issues before us? The language in the Supreme Court's majority opinion regarding framing and counterfactuals is of no consequence in this case, yes, Your Honor. In the context that that language was written, that was clearly related only to the sequencing issue, the claim versus counterclaim issue under Holmes Group and the well-pleaded complaint rule. The Supreme Court said that things may well have turned out differently if the initial claim had been the claim that allegedly conferred federal jurisdiction. And then it said there likely would have been federal jurisdiction. The dissent, in fact, said that there would have been federal jurisdiction if the sequencing had been reversed. And the majority didn't take issue with that. I think from the context, the framing issue pertains to the sequencing issue. Otherwise, it wouldn't have made sense for the court to say there likely would have been federal jurisdiction but for that sequencing issue. The Supreme Court did say explicitly that complete preemption can transform, recharacterize was the term it used, a purportedly purely state law claim into a federal claim. If it were otherwise, Congress's intent to have the FDIA completely preempt here, Congress's intent to have the FDIA occupy this space would be frustrated. One of the concerns that I have is that if you step back and look at the overall picture of what is happening here, it could perhaps uncharitably be said the Community Savings Bank is stepping in with its petition to create the potential for the preemption argument that gets the petitioners back into federal court and gets around the remand to state court. Well, Your Honor, the bank wouldn't need to be a party to the petition at all to get this into federal court. The bank is not a necessary party. The servicers could have brought the petition on their own. According to the Supreme Court, we look through, and when there is existing litigation that defines the party's controversy, we do look to the state law usury claims among other claims. And they allege that the servicers have liability for arranging loans made by the bank. That's the primary theory here. But those loans are made by the bank. They have to be governed by the FDIA. It cannot be that years later when a plaintiff decides to name certain defendants, and I see that my light is red, Your Honor. Wrap it up very quickly. It cannot be that years later a plaintiff's decision to only name certain defendants can change the law that applies to a particular loan that's either usurious or not at the time it is made. Thank you, Your Honor. Thank you. Mr. Hartzell? May it please the Court. I'm Jerry Hartzell of the North Carolina Bar. With me on this We represent the respondents, Tommy and Velma Knox, and Kerry Gordon. In response to your question, Judge Duncan, the documents that petitioners contend constitute their demand for arbitration appear at Joint Appendix, page 81. In response to your question, Judge Traxler, we believe that this Court's opinion that they refer to as Vaden II does not survive the Supreme Court's decision in Vaden III. However, if it did survive, we don't think it would affect this case. Go ahead. I did have a question about that. Do you, in your view, think we need to reach the issue of complete preemption here? No, Your Honor. And how would you analyze it without reaching that issue? Vaden, the Supreme Court's decision in Vaden, has a fairly clear framing instruction. And if I could be permitted to read one sentence from that opinion, please. The Court says the issue of Section, the text of Section 4 instructs federal courts to determine whether they would have jurisdiction over, quote, a suit arising out of the controversy between the parties, end quote. It does not give Section 4 petitioners license to recharacterize an existing controversy or manufacture a new controversy. In an effort to obtain a federal court's aid in compelling arbitration. Your opponent says that's just talking about the sequencing issue. Well, I think that we have to give the Supreme Court and the law clerks who work up there credit for picking their words thoughtfully. There's no limiting language on that. And that's not a sentence that's taken out of context. If you look at the, and it's a sentence that the district court quotes in its entirety. Another sentence, Section 4 does not invite federal courts to dream up counterfactuals. So this theme, and it's a theme that the Chief Justice in his dissent takes strong issue with where he complains about the majority's decision to look to the complaint. So I don't think that can fairly be characterized as something that's about mere sequencing. I think the words they use are recharacterize and manufacture. And so I don't think you can recharacterize or manufacture in any way, shape or form. That answer your question, Judge Duncan. If you can't get Community State Bank into this case, and we respectfully submit you cannot. Why? Number one, we didn't sue him. Number two, we said in our complaint back in 2005, plaintiffs do not assert in this action, any claim against any person not named herein, and specifically. Right. And you were going to seek relief. And that goes back to my question about the arbitration demand, because the document to which you referred me at J81 refers to, it's filed on behalf of the lawsuit defendants, which I understood Community Savings Bank to specifically not be one of. And in fact, in the petition, I'm sorry, am I amusing? No, no, sir. No, I am agreeing with you wholeheartedly, Your Honor. The petition says that the non-bank petitioners sent the respondents the demand for arbitration. I think I have to yield to Mr. Watkins to respond to that. I mean, I have the same. J81 is the answer to my question. But J81, it refers to the lawsuit defendants, which Community Savings Bank specifically in the complaint is not. I cannot speak for the petitioner. And it's not your, I mean, sorry. But that's where, if you look at their petition, that's the attachment to their petition where they say they are attaching the demand for arbitration. Right. So that's why I said it's at J81. So we've got the complaint saying we're not asserting any claims against Community State Bank. Then we've got the declaration filed back in May of 2005 that says, I unconditionally agree not to sue Community State Bank for any claim I have or may have in connection with any payday loan that has been made to or with me. So we respectfully say that there's no way you can get Community State Bank into this case without recharacterizing the complaint or manufacturing a claim that's been clearly disclaimed. Your Honors, it's difficult for me to leave the podium when I have 15 minutes remaining. But unless the court has any questions, I propose to sit down. Thank you. Thank you. Mr. Watkins. Thank you, Your Honor. First, the Vaden opinion clearly was talking about the sequencing issue when it talked about opinion said, true, the outcome in this case may well have been different had Vaden initiated the claim about the legality of Discover's charges. Because that controversy likely would have been amenable to adjudication in a federal forum. Discover could have asked a federal court to send the parties to arbitration. The court would not have said that. It would not have been likely that it would have been federal jurisdiction if the state chartered insured bank not appearing on the face of the complaint had been dispositive. If that were dispositive, it would not have been likely. And so the Supreme Court could not have meant that the recharacterizing of the type possible through complete preemption, as the court announced in Vaden 2, was impossible. As a matter of fact, the Supreme Court explicitly said that complete preemption can recharacterize purportedly, purely state law claims into federal claims. There's no confusion on that point. That part of Vaden 2 clearly survives the Supreme Court's opinion in the Vaden versus Discover bank case. Counsel, is your position that arbitration, and I respect your, I was about to ask you, why does your client really want to arbitrate a case where it has a whole harmless clause in the party, defendant, and an agreement not to be held liable, but that's between you and your client. I won't ask you that. So, but in your position, any time a complaint mentions the bank, and the mentioning of the bank in the factual sequence relates to the allegations that you can come in and ask for arbitration? No, Your Honor. Well, this is close to it. Go ahead. The underlying state court litigation here alleges the loans made by the bank of being usurious. The bank set the interest rates. That was critical in Vaden 2, and it's critical here. It alleges that those loans are usurious. There's a single loan with a particular interest rate. It's usurious or it's not. And here, because it's made by a state-chartered, federally insured bank, Congress has intended that that's covered by the FDIA. Now, it cannot be that then a plaintiff can leave the bank off and say that in connection with arranging usurious loans, that very same loan, that the servicers have liability. Whether or not that loan is usurious depends upon who made the loan. Even Vaden 2 talks about the originator of the loan. Crispin talks about that. The cases Crispin rely upon say it doesn't matter if the loan is sold later on down the line. Loans are frequently syndicated and sold. Your good name is at stake. It's more than just that. The bank here, especially after the strong opinion, if the loans that the bank made here, you look to the Republic Bank opinion, if the loans that the bank made here are deemed invalid as in violation of a state usury law, and it could be North Carolina here, it could be any of the 50 states, potentially, even though the bank is a state-chartered, federally insured bank entitled to the protection of the federal laws, if those loans were deemed usurious and invalid, it would be open season on the bank, quite frankly. Your question regarding indemnification, as I understand it, the district court erred in concluding that indemnification went only from the servicer to the bank. That's wrong. There are complicated and, quite frankly, ambiguous cross-indemnification provisions. Each party indemnifies the other for liability of the other that arises out of the wrongful conduct of the indemnitor. But there are also very broad carve-outs, so that if the potential receiver of the indemnity was also committed a wrongful act or fraud, as alleged here in the underlying complaint, or a whole host of other broad misconduct, there's no indemnification. Quite frankly, the worst case, or the best case scenario here is that those indemnification provisions would be the subject of complicated litigation. Well, there's a recrimination clause, basically. The clause here, it's not very clear what these clauses do. They probably do very little, to be quite honest, Your Honor. But there certainly is significant risk here that the bank faces. The risk is real. Now, to be clear, under the Vaden II analysis, the bank does not need to be involved at all. And, Judge Duncan, to answer your question, I apologize. Those letters, Joint Appendix 81, were only on behalf of the state court defendants, and I was wrong about that, and I apologize for that. That doesn't change the analysis here. The bank need not be a party here, and the bank can demand arbitration by bringing the section for a petition to compel arbitration. But the bank does not need to be an actual party to the petition to compel. And I see my light is red. You can finish that answer. The bank does not need to actually be a party, because the bank made the loan. Those loans are judged by one law or another. Here, because it's state-chartered, federally insured, it's judged by the FDIA, as Congress intended. Thank you, Your Honor. Thank you, Mr. Watkins. We'll come back in Greek Council, and then go into our next case.
judges: William B. Traxler Jr., Roger L. Gregory, Allyson K. Duncan